FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 08, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH B. ONLEY, a married man,<br><br>Plaintiff,<br><br>v.<br><br>JOHN J. JORDAN, in his individual capacity; RICHARD LARSON, in his individual and official capacities; DANIEL L. PETERSON, in his individual and official capacities; CURTIS J. KNAPP, in his individual and official capacities; and PEND OREILLE COUNTY PUBLIC UTILITY DISTRICT, a municipal corporation,<br><br>Defendants. | No.   2:16-CV-00203-SMJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

Plaintiff Joseph Onley was demoted from his position as a manager with the Pend Orielle County Public Utility District in June 2013 and later terminated in June 2016. In this action, Onley alleges breach of contract and due process claims relating to his demotion, and breach of contract, due process, and state-law discrimination claims relating to termination. ECF No. 15. Defendants (collectively

ORDER GRANTING
SUMMARY JUDGMENT- 1

"the PUD") move for summary judgment on Onley's claims relating to his demotion,[1] arguing that these claims fail as a matter of law because Onley was an at-will employee. ECF No. 17 at 2. In the alternative, the PUD argues that Onley was afforded due process and that the individual defendants are entitled to qualified immunity.[2] ECF No. 17 at 2. As explained below, because the PUD's Employment Policy Manual created enforceable procedural obligations that it was required to follow in disciplining or terminating Onley, Onley's employment was not strictly at will. Nevertheless, because the evidence in the record demonstrates that the PUD complied with its discipline policy in demoting Onley in June 2013, Onley's contract and due process claims relating to that demotion fail. It is therefore unnecessary to reach the PUD's qualified immunity argument. Defendants' motion is granted.

## II.    BACKGROUND

Onley began work for the PUD as a distribution engineer in June 1986. ECF No. 18 at 2; ECF No. 24 at 2. In 2001, the PUD promoted Onley to the position of

---

[1] The PUD's motion for summary judgment does not address Onley's claims relating to his June 2016 termination.

[2] The PUD also argues that Plaintiff has not established that the Court has subject matter jurisdiction over his state-law contract claims. ECF No. 17 at 6–7. The Court has already concluded that it has jurisdiction over Onley's state-law claims. ECF No. 26 at 4–5. Accordingly, it is unnecessary to consider this argument here.

ORDER GRANTING
SUMMARY JUDGMENT- 2

CNS[3] manager. ECF No. 24 at 2. In this position, Onley was responsible for overseeing deployment of fiber optic networks in Pend Oreille County. ECF No. 24 at 2. Onley's supervisor was John Jordan, who was the PUD's Director of Finance before becoming General Manager in 2012. ECF No. 24 at 2; ECF No. 29 at 2.

The PUD provided Onley with an Employment Policy Manual, which he was directed to follow in managing subordinate employees. ECF No. 24 at 2. The policy manual included a progressive discipline policy with four progressive levels of discipline: (1) oral warning; (2) written warning; (3) suspension/final warning and/or loss of other employment rights; and (4) discharge. ECF No. 18 Exh. 3 at 1–3; ECF No. 24 at 2–3. Onley understood that the policy manual, including the progressive discipline policy, applied to all PUD employees, including him. ECF No. 24 at 2–3.

Among other projects, Onley managed a $27 million federal grant to expand fiber-optic service in the county. ECF No. 18 Exh. 1; ECF No. 24 at 2. The project encountered significant cost overruns, apparently as the result of calculation errors. ECF No. 18 Exh. 1, Exh. 2 at 2. Onley apologized for the cost overruns to the PUD Board at a meeting on June 11, 2013. ECF No. 18 Exh. 1.

---

[3] "CNS" is not defined in the record, but it appears to stand for Community Network System. *See* Pend Oreille Public Utility District Community Network System, https://cnsfiber.net/Home (last visited March 8, 2017).

ORDER GRANTING
SUMMARY JUDGMENT - 3

On June 17, 2013, Jordan provided Onley with a performance evaluation, setting forth concerns about Onley's performance as CNS Manager. ECF No. 18 Exh. 2; ECF No. 24 at 3. In the evaluation, Jordan noted that Onley worked hard and cared deeply about the fiber-optic project but was mostly very critical of Onley's performance, explaining that Onley had difficulty with being overly optimistic and setting unrealistic timelines, managing budgets, and planning and monitoring projects. ECF No. 18 Exh. 2 at 2. Jordan specifically singled out the issue with cost overruns on the fiber-optic project. *Id.* He explained that during the first 3 years the project reports showed no budget problems. *Id.* However, in April 2013, Onley prepared a report showing a cost overrun of $189,531. *Id.* Then, on June 4, 2013, Onley prepared a report showing a projected cost overrun of $1,207,465. *Id.* According to Jordan, the significant cost overruns were not apparent in earlier reports because of errors committed by Onley in the report preparation. *Id.* Analysis by PUD finance staff discovered additional errors and projected a cost overrun of $1.9 to 2.5 million. *Id.* Jordan's evaluation places primary blame on Onley for the underlying cost overruns, explaining that the Board made a decision to significantly expand the project scope based on Onley's incorrect assessment that sufficient funds were available to do so. *Id.* at 3. Jordan also notes significant interpersonal issues with Onley's interactions with co-workers, contractors, and the public. *Id.* at 3–5. Finally, Jordan was very critical of Onley's decision to appear in

an advertisement for a local internet provider, which other providers objected to as demonstrating favoritism. *Id.* at 3–8.

Jordan recommended against terminating Onley, but stated that he was "taking [Onley] to Final Warning Status," meaning that if Onley's "future job performance continues to result in the types of significant problems documented in this (and prior) performance review(s), that would otherwise subject him to disciplinary action over the next 12 months, his employment at the District will be terminated." ECF No. 18, Exh. 2 at 5; ECF No. 29 at 2–3. Jordan further stated that he intended to remove Onley from his duties as CNS manager and reassign him to a temporary position, reducing his pay from $101,923 to $80,000. ECF No. 18 Exh. 2 at 5; ECF No. 24 at 3.

On June 18, 2013, the PUD demoted Onley by transferring him from the CNS Manager position to an interim GIS Engineer position. ECF No. 18 at 2. Onley's salary was reduced from $101,923 to $80,000. ECF No. 24 at 3; ECF No. 29 at 3. Onley avers that he was given no notice that the PUD was considering demoting him prior to receiving Jordan's evaluation. ECF No. 24 at 3. He states he was not given any opportunity to be heard. *Id.* Jordan contends that he provided Onley notice of his decision through his June 17 evaluation and that his meeting with Onley after providing the evaluation satisfied the informal hearing contemplated by the discipline policy. ECF No. 29 at 4.

ORDER GRANTING
SUMMARY JUDGMENT- 5

After Onley's demotion the PUD eliminated the CNS Manager position. ECF No. 18 at 3.

Onley initially filed this action on June 8, 2016, alleging that in his June 2013 demotion was in breach of contract and violated his constitutional right to due process. ECF No. 1. On December 9, 2016, Onley filed an amended complaint adding allegations of breach of contract, violation of due process, and discrimination under RCW § 49.60.180 relating to the PUD's termination of Onley's employment in June 2016 after he filed his initial complaint in this case. ECF No. 15. at 8–9. The PUD now moves to dismiss Onley's claims regarding his demotion. ECF No. 17.

### III.    Plaintiff's Surreply/Motion to Strike

Onley filed a surreply brief in which he argues that the Court should strike certain evidence submitted by the PUD with its reply brief. ECF No. 31. The PUD argues that Onley's motion should be denied as procedurally improper because the local rules do not permit filing a surreply on a motion for summary judgment. ECF No. 32 at 2. The memorandum was filed in accordance with the Court's scheduling order. *See* ECF No. 14 at 9–10. Accordingly, the Court will not deny the request on procedural grounds.

Onley argues that the Court should strike paragraphs 5, 11, and 14, of the Declaration of John Jordan. ECF No. 31 at 2. Onley objects to Jordan's

ORDER GRANTING
SUMMARY JUDGMENT- 6

characterization of employment with the PUD as "at will," arguing this is an impermissible legal conclusion. ECF No. 31 at 2. The PUD argues that Jordan's statements that employment with the PUD is "at will" should not be stricken because plaintiff himself argues that he was not an "at will" employee. ECF No. 32 at 2. But Onley argues that he is not an at-will employee in his *response brief*, where it is unquestionably proper to make legal arguments. By contrast, Jordan declares that employment at the PUD is "at-will" in a declaration. Whether an employment relationship is "at will" may be a fact-intensive question, but the ultimate conclusion is a legal one. Similarly, Jordan's statements in paragraph 14 that he provided "notice" to Onley and that he provided "the informal 'hearing' contemplated in the policy," ECF No. 29 at 4, can be interpreted as legal conclusions.

The Court disregards Jordan's apparent legal conclusions concerning Onley's employment relationship with the PUD. However, it is unnecessary to strike any portion of Jordan's declaration. Instead, the Court interprets the statements at issue as expressing Jordan's subjective beliefs that in his position as supervisor he could terminate Onley without cause and that he was complying with the PUD's discipline policies.

Onley also asks the Court to strike exhibits 4 and 5 to Defendant's Statement of Undisputed Facts (Reply), ECF No. 28. ECF No. 31 at 2. Exhibit 4 is an employment contract between the PUD and another employee whom Onley was

ORDER GRANTING
SUMMARY JUDGMENT- 7

involved in hiring. ECF No. 28 Exh. 4. The contract states that the employee's employment with the PUD was "at-will." ECF No. 28 Exh. 4. Exhibit 5 is an unsigned application acknowledgment and authorization form that acknowledges that employment with the PUD is "at will." ECF No. 28 Exh. 5. Onley argues these documents are irrelevant. ECF No. 31 at 2. Because both of these documents are potentially relevant to the nature of the employment relationship between Onley and the PUD, there is no basis to strike them.

Finally, Onley argues that the Court should strike the argument at page 2, lines 19 through 26 of Defendants' reply memorandum because it includes improper discussion of deposition testimony not placed in the record. ECF No. 31 at 2. The PUD does not respond to this argument. Onley is correct that this portion of the PUD's reply memorandum refers to facts not in the record. Accordingly the sentence beginning at line 18 and continuing to line 26 on page 2 of the PUD's reply memorandum, ECF No. 27, is stricken.

## IV.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If

the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## V.    DISCUSSION

**A.    Onley was not strictly an at-will employee of the PUD.**

The PUD argues that Onley's breach of contract and due process claims regarding Onley's 2013 demotion fail as a matter of law because Onley was an at-will employee. ECF No. 17 at 4. Onley argues that there is nothing in the PUD employment policy that defines his employment relationship with the PUD as "at will" and no evidence in the record that he could be demoted or terminated at will. ECF No. 23 at 6, 10.

First, Onley's arguments fundamentally misunderstands the relevant question and evidentiary burden here. In Washington an employment contract is generally "terminable at will by either the employee or employer." *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1084 (Wash. 1984). "[S]uch a contract is terminable by the employer *only for cause* if (1) there is an implied agreement to that effect or (2) the employee gives consideration in addition to the contemplated service." *Id.* Similarly, it is well established that where a public employee has a property interest in continued employment, the government may not deprive him of that right without due process.[4] *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). However, "in Washington, as in most states, the general rule is that a public employee terminable at will does not have a property interest in continued employment, while an employee whose contract provides, either expressly or by implication, that he may only be terminated for cause does have such an interest." *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 475 (9th Cir.

---

[4] The Fourteenth Amendment also protects against deprivation of liberty without due process. *See Bradie v. Gebbie*, 859 F.2d 1543, 1547 (9th Cir. 1988). In the public employment context, an employee's protected liberty interest may be implicated where his "employer makes a charge that might seriously damage the terminated employee's standing and associations in his community or imposes on a terminated employee a stigma or other disability that forecloses his freedom to take advantage of other opportunities." *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 925 (9th Cir. 2013) (quoting *Tibbetts v. Kulongoski*, 567 F.3d 529, 536 (9th Cir.2009)) (internal alterations and quotation marks omitted). Onley does not plead facts plausibly supporting such a claim, so it is unnecessary to address here.

ORDER GRANTING
SUMMARY JUDGMENT- 10

1991) (citing *Punton v. Seattle Pub. Safety Comm'n*, 32 Wn. App. 959, 964 (1982)). To prevail on both his contract and due process claims, Onley must demonstrate that he could be terminated (or demoted) only for cause—that is, that his employment was *not* "at will."

There is no evidence in the record that Onley had a formal, written contract with the PUD. However, "absent specific contractual agreement to the contrary, . . . [an] employer's act in issuing an employee policy manual can lead to obligations that govern the employment relationship." *Thompson*, 685 P.2d at 1087. Accordingly, the critical question here is whether the PUD's Employment Policy Manual modified the terminable at will relationship by creating an enforceable expectation that Onley would be fired only for cause.

Employers are generally bound by promises of specific treatment in specific situations made in employment manuals—"[o]nce an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory." *Id.* at 1088. On the other hand, general statements of company policy in an employment manual are not binding. *Id.*

The PUD's employment policy manual includes a progressive discipline policy with a purpose of "minimiz[ing] the likelihood of any employee, through misunderstanding or otherwise, becoming subject to any disciplinary action." ECF

ORDER GRANTING
SUMMARY JUDGMENT- 11

No. 18 Exh. 3 at 1. The policy establishes four progressive levels of discipline: (1) oral warning "for minor offenses or bringing attention to potential problems developing"; (2) written warning "for a more serious offense or when an employee who has been orally warned for minor offenses or problems . . . repeats them or fails to take corrective action"; (3) suspension/final warning and/or loss of other employment rights "for serious infractions of employee rules of conduct which are not deemed sufficient justification for immediate discharge, or for repeated offenses, or for failure to correct an action for which a written warning was previously given"; and (4) discharge "where the required corrective action was not achieved by one or all of the steps above." ECF No. 18 Exh. 3 at 1–3. A supervisor also has discretion to suspend these three steps where he feels "that the nature of the violation warrants discharge." ECF No. 18 Exh. 3 at 2. The policy further specifies specific processes that must be followed at each level.

The policy includes a list of conduct that is sufficient justification for the imposition of discipline and a list of conduct justifying immediate discharge, but notes that both lists "establish[] general guidelines and [are] not meant to be all-inclusive." ECF No. 18 Exh. 3 at 3–6.

Where a supervisor determines that discharge is appropriate, he must notify the PUD's general manager and provide: "(1) reasons for the recommended discharge; (2) record of any previous warnings or disciplinary actions; (3) summary

ORDER GRANTING
SUMMARY JUDGMENT - 12

of the employee's past work record and length of employment with the District; and (4) any other relevant information." ECF No. 18 Exh. 3 at 3. "If the General Manager determines that there is probable cause for termination, the employee shall be entitled to a pre-termination hearing." ECF No. 18 Exh. 3 at 3.

The PUD's disciplinary policy includes more than general statements of policy. It makes promises of specific treatment in specific circumstance, including by providing for specific procedures at specific levels of discipline and by requiring notice and a pre-termination hearing. These provisions use mandatory rather than discretionary language—*e.g.*"[in] each case of disciplinary suspension, a written memo *will* be prepared . . ." and "[i]f the General manager determines that there is probable cause for a termination, the employee *shall* be entitled to a pre-termination hearing." ECF No. 18 Exh 3 at 2–3 (emphasis added). These promises are enforceable.

The policy does not, however, mandate specific, progressive discipline for specific offenses. Onley concedes that a supervisor has discretion to dispense with progressive discipline where termination is warranted, but nevertheless argues that an employee may be disciplined or discharged only for a violation of the policy. ECF No. 11–12. This understates a supervisor's discretion under the policy. In addition to having discretion to dispense with progressive discipline for offenses warranting immediate termination, the policy does not require a supervisor to begin

ORDER GRANTING
SUMMARY JUDGMENT- 13

discipline with an oral warning; for more serious offenses, discipline may begin at any later stage. *See* ECF No. 18 Exh. 3 at 1–3. Additionally, the policy does not limit discipline to the offenses listed in the policy; instead, the policy makes clear that the lists of offenses are not all inclusive. See ECF No. 18 Exh. 3 at 3, 5.

**B.  Onley has not provided any evidence that the PUD violated enforceable provisions of its discipline policy in demoting him.**

Jordan concluded that Onley's conduct required "taking [Onley] to Final Warning Status." ECF No. 18 Exh. 2 at 5. As noted, under the PUD's Progressive Discipline Policy, a supervisor has discretion to apply this level of discipline when he determines it appropriate, the policy does not mandate that it be applied only for certain offenses or that it be preceded by oral or written warning. The policy does, however, create mandatory procedural obligations when the "Suspension/Final Warning and/or Loss of Other Employment Rights" level of discipline is applied:

> A suspension and/or loss of employment rights is time off with possible forfeiture of pay, loss of upgrades or demotion for disciplinary reasons, or loss of benefits and will be for such duration as the District determines is reasonable and necessary for a specific violation. In each case of disciplinary suspension, a written memo will be prepared, indicating the event or events which led to the suspension; the duration of the suspension; a statement indicating the required corrective action on the part of the employee; if appropriate, the employee's explanation or comments; a statement indicating that it is a 'final warning', and further indicating that the employee will be discharged upon the occurrence of another infraction or unless corrective action is taken within the stated time period. The memo may be signed by the employee and any other person that may be present at the discussion. The memo must be signed by the employee's direct supervisor with copies forwarded to the General Manager. After review with the

ORDER GRANTING
SUMMARY JUDGMENT- 14

> employee, a copy of this memo is given to the employee, and a copy is entered in the employee's personnel file.

ECF No. 18 Exh. 3 at 2.

The evidence in the record demonstrates that Onley's demotion complied with the requirements of this policy. First, demotion is specifically identified as a proper form of discipline. ECF No. 18 Exh. 3 at 2. Second, Jordan complied with the stated procedural requirements by providing a signed, written memo specifying the reasons for the discipline and stating that it was a final warning and further violation would result in termination. ECF No. 18 Exh. 2.

While the PUD's Discipline Policy included specific provisions that altered Onley's at-will status in some respects, the evidence in the record demonstrates that the PUD complied with its obligations under the policy in demoting Onley in 2013. Accordingly Onley's breach of contract and due process claims with respect to the demotion fail.

### VI.    CONCLUSION

For the reasons discussed, no genuine issue of material fact exists regarding Onley's claims that his demotion breached his employment contract or violated due process. Because the PUD complied with the enforceable obligations of its discipline policy when it demoted Onley, Onley cannot prevail on those claims.

Accordingly, **IT IS HEREBY ORDERED**:

ORDER GRANTING
SUMMARY JUDGMENT- 15

1. Plaintiff's Surreply/Motion to Strike, **ECF No. 31**, is **GRANTED IN PART and DENIED IN PART**.

   A. The sentence beginning at line 18 and continuing to line 26 on page 2 of Defendants' Reply Memorandum, **ECF No. 27**, is **STRICKEN**.

2. Defendants' Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. Plaintiff's breach of contract and due process claims relating to his demotion in June 2013 are **DISMISSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 8th day of March 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER GRANTING
SUMMARY JUDGMENT- 16