FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 04, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH B. ONLEY, a married man,<br><br>                Plaintiff,<br><br>     v.<br><br>JOHN J. JORDAN, in his individual capacity; RICHARD LARSON, in his individual and official capacities; DANIEL L. PETERSON, in his individual and official capacities; CURTIS J. KNAPP, in his individual and official capacities; and PEND ORIELLE COUNTY PUBLIC UTILITY DISTRICT, a municipal corporation,<br><br>                Defendants. | No.   2:16-CV-0203-SMJ<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Plaintiff Joseph Onley was demoted from his position as a manager with the Pend Orielle County Public Utility District in June 2013 and later terminated in June 2016. The Court previously granted summary judgment in Defendants' (collectively the PUD) favor on Onley's claims relating to his demotion. ECF No. 35. Defendants' now move for summary judgment on Onley's remaining claims

SUMMARY JUDGMENT ORDER - 1

relating to his termination. ECF No. 36. The PUD asserts that Onley's due process and breach of contract claims fail because he was terminated for budgetary reasons, as opposed to disciplinary reasons subject to the PUD's progressive disciplinary process. Because issues of material fact remain regarding whether Onley was terminated for disciplinary reasons, the PUD's motion is denied with respect to the due process and breach of contract claims. The PUD further argues that Onley fails to state a prima facie age discrimination claim. Because there is no evidence in the record from which the Court could conclude that age discrimination played a role in Onley's termination, the PUD's Motion for Summary Judgment is granted with respect to Onley's age discrimination claim.[1]

## II. BACKGROUND

### A. Factual Background

Onley began work for the PUD as a distribution engineer in June 1986. ECF No. 18 at 2; ECF No. 24 at 2. In 2001, the PUD promoted Onley to the position of CNS[2] manager. ECF No. 24 at 2. On June 18, 2013, the PUD demoted Onley by transferring him from the CNS Manager position to an interim GIS Engineer

---

[1] Onley stipulates to the dismissal of all claims against the individual defendants. ECF No. 38 at 2. Accordingly, all claims are dismissed against Defendants John J. Jordan, Richard Larson, Daniel L. Peterson, and Curtis Knapp.

[2] "CNS" is not defined in the record, but it appears to stand for Community Network System. *See* Pend Oreille Public Utility District Community Network System, https://cnsfiber.net/Home (last visited March 8, 2017).

position.[3] ECF No. 18 at 2. In January 2014, the PUD transferred Onley to another temporary GIS Engineer position. ECF No. 37 at 2. This position involved mapping the location of fiber optic infrastructure, a project that the PUD asserts was intended to be completed by July 31, 2014. *Id.*

In late 2015, the PUD received notice that its largest customer, Ponderay Newsprint Company (PNC), intended to terminate its power-supply contracts. ECF No. 37 at 2–3. At the time, PNC represented 70% of the PUD's electricity load and paid $30 million for the delivery of power. ECF No. 37 at 3. Importantly, however, the PUD and PNC are involved in litigation, and at this time, the PUD still supplies power to PNC. ECF No. 39 at 2. The PUD asserts that as a result of this expected loss of business, and related litigation, the PUD evaluated department projects and associated spending in an effort to reduce costs, including IT and CNS projects. ECF No. 37 at 3.

In June 2016, HR and IT manager Lloyd Clark identified Onley's position as a candidate for elimination because it involved work on a project that was initially scheduled for completion in July 2014. ECF No. 37 at 4. Onley disputes that the project was ever expected to be completed by July 2014 or that his position was a drain on PUD resources, noting that the project was federally funded. ECF No. 39

---

[3] A detailed discussion of the facts relating to Onley's demotion is contained in the Court's order granting summary judgment to Defendants on the claims relating to the demotion. ECF No. 35

at 2–3. Clark asked Onley to evaluate where he was at on the project, and Onley responded in a memo that he expected to need approximately 18 months to complete the project. ECF No. 37 at 5.

The PUD asserts that it determined the project was unnecessary and therefore decided to eliminate Onley's position. *Id*. PUD General Manager Colin Willenbrock directed Clark to discuss early retirement with Onley as a possibility in lieu of termination. *Id*. Clark had discussions with Onley about transitioning to retirement on several occasions in early June 2016. *Id.* at 6. Onley states that Clark asked him to "give him a number" that he would consider to retire. ECF No. 39 at 4. Only told Clark that he had no interest in retiring. *Id*. Clark nevertheless continued to press Onley about retirement, but stated that the PUD was not trying to push him out. *Id*.

On June 14, 2016, Clark presented Onley with an early retirement offer, explaining that downsizing was likely to happen in several areas at the PUD. ECF No. 39 at 5. Onley told Clark he would consider the offer and provide his response the following Monday. *Id*. On Friday, June 17, Onley went to the office despite planning to take the day off. *Id*. Onley asserts that Clark again confronted him again about the retirement offer, and that he reaffirmed he would provide his answer on Monday as planned. *Id*. The PUD, by contrast, asserts that Onley rejected the severance and early retirement offer that day. ECF No. 37 at 6. According to the

PUD, Willenbrock then decided to immediately terminate Onley because he was concerned Onley might destroy electronic information or remove documents. *Id.* at 7. Onley asserts that after he told Clark he would provide his answer on Monday, Clark presented him with a written termination agreement and informed him that his employment was being terminated, effective immediately. ECF No. 39 at 5–6.

The PUD asserts that it ultimately eliminated eight other positions through attrition. ECF No. 37 at 7. Onley asserts that no other employee was laid off for budget reasons. ECF No. 39 at 3.

**B.     Procedural History**

Onley initially filed this action on June 8, 2016, alleging that his June 2013 demotion was in breach of contract and violated his constitutional right to due process. ECF No. 1. On December 9, 2016, Onley filed an amended complaint adding allegations of breach of contract, violation of due process, and discrimination under RCW § 49.60.180 relating to the PUD's termination of Onley's employment in June 2016 after he filed his initial complaint in this case. ECF No. 15. at 8–9. On March 8, 2017, the Court granted summary judgment in favor of the PUD on Onley's claims relating to his demotion. ECF No. 35. The PUD now moves for summary judgment on Onley's remaining claims, which relate to his termination in June 2016. ECF No. 36.

### III.     LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## IV. DISCUSSION

**A. An issue of fact exists regarding whether Onley was terminated for disciplinary reasons.**

In Washington an employment contract is generally "terminable at will by either the employee or employer." *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1084 (Wash. 1984). Similarly, for due process purposes, "in Washington, as in most states, the general rule is that a public employee terminable at will does not have a property interest in continued employment, while an employee whose contract provides, either expressly or by implication, that he may only be terminated for cause does have such an interest." *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 475 (9th Cir. 1991) (citations omitted). However, the Court has already determined that Onley's employment was not strictly "at will" because the PUD was bound by enforceable promises in its employment policy manual relating to progressive discipline. ECF No. 35 at 14. It appears to be undisputed that the PUD did not follow disciplinary policy in terminating Onley. Accordingly, whether Onley's due process or breach of contract claims survive summary judgment turn on whether he was fired for disciplinary reasons to which the provisions of the employment policy manual apply.

The PUD asserts that Onley was not terminated for disciplinary reasons; instead, it argues that his position was eliminated for budgetary reasons. ECF No. 36 at 11–12. The PUD argues that Onley's position was temporary, not intended to

SUMMARY JUDGMENT ORDER **-** 7

last more than two years, and that the PUD decided to eliminate the position as part of instituting drastic cost-saving measures. *Id*. Onley argues that an issue of fact exists concerning whether his termination was for disciplinary, as opposed to budgetary, reasons. ECF No. 38 at 9–10.

It is clear from the record that disputed issues of fact remain about the reason for Onley's termination. First, the parties' dispute the timeline and circumstances of Onley's termination. Onley asserts that he was surprised by the termination, which came before the time he had agreed to provide a response to the early-retirement offer. The PUD asserts just the opposite, that it decided to terminate Onley after he rejected the offer. Additionally, Onley disputes that the PUD eliminated other positions for budgetary reasons, and asserts that in-fact the PUD took other staffing actions that were inconsistent with downsizing for budgetary reasons. Finally, even some of the PUD's own asserted reasons for terminating Onley suggest that disciplinary reasons may have played a role in his termination: The PUD suggests that the GIS project being overdue played a role in the elimination of the position (the status of that project appears to have been closely tied to Onley's job performance). And, perhaps most importantly, Willenbrock allegedly terminated Onley immediately after he rejected the early retirement offer because he was worried about actions Onley might have taken if he was not

immediately terminated. Accordingly, summary judgment on these claims is inappropriate at this time.

**C.     Onley fails to establish a prima facie age discrimination claim.**

Under Washington law, it is an unlawful to discharge a person because of age. Wash. Rev. Code. § 49.60.180(2). To establish a prima facie case of age discrimination in employment, the employee must show that he: "(1) was within the statutorily protected age group; (2) was discharged by the defendant; (3) was doing satisfactory work; and (4) was replaced by a significantly younger person." *Hill v. BCTI Income Fund–I*, 23 P.3d 440, 450 (Wash. 2001), o*verruled on other grounds by McClarty v. Totem Elec.*, 137 P.3d 844 (Wash. 2006). The *McDonnell Douglas* burden shifting analysis applies to WLDA discrimination claims. *Id.*; *Scrivener v. Clark Coll.*, 309 P.3d 613, 617 (Wash. App. 2013). Accordingly, once the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to present legitimate reasons for the adverse action, and if the employer meets that burden, the burden shifts back to the employee to demonstrate a genuine issue of material fact regarding whether the employer's reasons were pretext for discrimination. *Id.*

It is undisputed that Onley was within the statutorily protected age group and that he was terminated. And there is at least an issue of fact regarding whether Onley was doing satisfactory work. Onley has not established that he was replaced by a

younger person. However, recent Washington Court of Appeals precedent casts doubt on whether replacement remains a required element of a plaintiff's prima facie case. *See Mikkelsen v. Pub. Util. Dist. # 1 of Kittitas Cnty*, 380 P.3d 1260, 1269 (Wash. App. 2016).

The Court need not resolve whether replacement remains an element of age discrimination in Washington because, assuming Onley has established a prima facie case, he has not demonstrated that the PUD's proffered reasons for his termination were pretext for age discrimination. While there is evidence that creates an issue of fact concerning whether Onley was terminated for some reason other than budgetary problems, there is simply no evidence in the record from which the Court could infer that age discrimination played a role in Onley's termination. Indeed there is no indication that the PUD ever took any action against Onley on the basis of his age. The discussions between Clark and Onley relating to retirement appear to be related to facilitating Onley's departure, but there is no indication in the record that age or retirement status played any role in the decision to terminate Onley's employment.

### V. CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

**1.** Defendants' Second Motion for Summary Judgment, **ECF No. 36**, is **GRANTED IN PART DENIED IN PART** as follows:

    *A.*    Defendants' Motion for Summary Judgment on Plaintiff's Due Process and Breach of Contract Claims relating to Plaintiff's June 2016 termination is **DENIED**.

    *B.*    Defendant' Motion for Summary Judgment on Plaintiff's age discrimination claim is **GRANTED**.

**2.**    All claims against Defendants John J. Jordan, Richard Larson, Daniel L. Peterson, and Curtis J. Knapp are **DISMISSED with prejudice**;

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 4th day of August 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

SUMMARY JUDGMENT ORDER - 11